IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDRICK M. BLAU, et al., | No. C 11-00541 CRB |
| Plaintiffs, | **ORDER GRANTING MOTION TO COMPEL ARBITRATION** |
| v. | |
| AT&T MOBILITY, et al., | |
| Defendants. / | |

On October 21, 2011 the Court heard argument on two motions in this purported class action against AT&T Mobility and AT&T Inc. (collectively, "Defendants") based on allegations that Plaintiffs (AT&T phone users) received poor quality service over AT&T Mobility's cellular network. See generally Compl. (dkt. 34). The first was a motion by AT&T Inc. to dismiss the case against it for lack of personal jurisdiction. See generally MTD (dkt. 36). Following the motion hearing, the Court granted Plaintiffs sixty days to conduct jurisdictional discovery. See dkt. 64. However, AT&T Inc. recently notified the Court of its withdrawal of the motion to dismiss for lack of personal jurisdiction, "because of the burdens that jurisdictional discovery and further briefing would impose on the Court and the parties." See dkt. 72. Although Plaintiffs have registered their displeasure with that notice, see P's Supp. Br. (dkt. 75) at 3 ("Make no mistake: AT&T's 'notice' to the Court is an outrageous and surreptitious attempt by AT&T to tell the Court how to conduct its

business"), the Court accepts AT&T Inc.'s withdrawal of the motion and considers the motion terminated.[1] The second motion heard on October 21, 2011 was Defendants' motion to compel arbitration and stay the case pending arbitration. See Mot. to Compel (dkt. 38). The Court now reaches that motion, and compels arbitration.[2]

## I. BACKGROUND

Plaintiffs Fredrick Blau, Jacob Stern, Anthony Tran, and Lenza McElrath purport to bring a class action against Defendants relating to AT&T's alleged aggressive marketing of "their service to users of smartphones and other data hungry devices," despite "knowing [that] their network infrastructure could not possibly accommodate the demands the increased usage would cause." Compl. at 2. They initially brought suit in February 2011, see dkt. 1, then stipulated to stay the case pending the Supreme Court's decision in AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740 (2011), see dkt. 26. Following Concepcion, Plaintiffs filed an amended complaint in June 2011, adding federal claims, see generally Compl. The Complaint includes causes of action for: (1) breach of contract - express warranty; (2) breach of contract - the implied warranty of merchantability; (3) false advertising under California Business and Professions Code § 17500; (4) unfair and deceptive acts under the Consumer Legal Remedies Act (CLRA); (5) fraud; (6) fraud by

---

[1] Plaintiffs complain in their unauthorized supplemental brief that the withdrawal of the motion did not comply with Civil Local Rule 7-7 (which provides for the voluntary withdrawal of a motion within 7 days after service of an opposition). Id. at 3. Although the withdrawal is untimely under Rule 7-7, that Rule does not restrict the actions of the Court. The Rule states, "Upon the filing of a timely withdrawal, the motion will be taken off-calendar. Otherwise, the Court may proceed to decide the motion." Civil L.R. 7-7(e). If the Court was obligated to decide the motion, the Rule would presumably use the word "shall" and not "may." Plaintiffs seem to acknowledge this. See P's Supp. Br. at 3 ("the Motion remains before the Court . . . until such time as this Court orders otherwise"). Accordingly, the Court accepts AT&T Inc.'s late withdrawal of the motion, as it finds that forcing the parties to litigate the jurisdictional motion, particularly given the merits of the motion to compel arbitration discussed herein, would be a poor use of the parties' and the Court's resources.

[2] Defendants also filed a third motion, seeking to dismiss the complaint as to Plaintiff Anthony Tran. See dkt. 37. At that time, Defendants did not claim that Tran was subject to an arbitration agreement. The Court on October 28, 2011 granted Defendants' motion to dismiss in part, but allowed Plaintiff Tran to amend the complaint as to some claims. See dkt. 70. The Court recently granted Plaintiff Tran's stipulated request for an extension of time to file his amended complaint, see dkt. 74., and Tran did so, see dkt. 76. This Order therefore does not apply to Plaintiff Tran.

2

concealment; (7) violation of the Federal Communications Act (FCA); (8) violation of the Magnuson-Moss Warranty Act (MMWA); and (9) violation of RICO. Id.

Defendants move to compel arbitration and stay the case pending arbitration, see Mot. to Compel.

## II. DISCUSSION

### A. Legal Standard

The Federal Arbitration Act (FAA) provides that an agreement to submit commercial disputes to arbitration shall be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Congress's purpose in passing the Act was to put arbitration agreements "upon the same footing as other contracts," thereby "reversing centuries of judicial hostility to arbitration agreements" and allowing the parties to avoid "the costliness and delays of litigation." Scherk v. Alberto-Culver Co., 417 U.S. 506, 510-11 (1974) (quoting H. R. Rep. No. 96, 68th Cong., 1st Sess., 1, 2 (1924)).

In applying the Act, courts have developed a "liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co., 460 U.S. 1, 24-25 (1983). The Supreme Court has emphasized that courts should refer a matter for arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960). "In the absence of any express provision excluding a particular grievance from arbitration . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." Id. at 584-85. Thus, any doubt about the applicability of an arbitration clause must be "resolved in favor of arbitration." Id. at 589.

At the same time, the Supreme Court has repeatedly emphasized that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Tech. Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986) (quoting United Steelworkers, 363 U.S. at 582). Thus, a court's task in

3

reviewing the arbitrability of a particular dispute is to determine whether the parties have agreed to submit that dispute to arbitration. "The standard for demonstrating arbitrability is not high." Simula, Inc. v. Autoliv, Inc., 175 F.3d 717, 719 (9th Cir. 1999). "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds v. Byrd, 470 U.S. 213 (1985) (citing §§ 3 and 4 of the FAA) (emphasis in original).

The final phrase of § 2 of the FAA provides that arbitration agreements are to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, in addition to determining the arbitrability of a dispute, courts must determine the enforceability of the arbitration agreement. Grounds for declaring an arbitration agreement unenforceable are determined by "ordinary state-law principles that govern the formation of contracts." Circuit City, Inc. v. Adams, 279 F.3d 889, 892 (9th Cir. 2002) (quoting First Options of Chic., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 81 (2000).

### B. Analysis

Plaintiffs in this case make many arguments against compelling arbitration, but do not meet their burden of proving that their claims are unsuitable for arbitration. See Green Tree, 531 U.S. at 81. This Order will discuss each of Plaintiffs' arguments in turn.

#### 1. Applicability to AT&T Inc.

Plaintiffs ask the Court to deny the Motion as to AT&T Inc., arguing that "in these very proceedings AT&T has admitted that AT&T Inc. does not fall within the scope of the AT&T Arbitration Agreements." Opp'n to Mot. to Compel (dkt. 44) at 2. Plaintiffs further urge that AT&T Inc. is not included in the agreement because "[w]hen the agreement is read as a whole, it is inescapable that the agreement refers to those who may provide services under the agreement." Id. at 5. This argument is unpersuasive. Either AT&T Inc. does not

4

provide any services, in which case it should be dismissed from the lawsuit for lack of personal jurisdiction, or AT&T Inc. does provide services, in which case the arbitration agreements apply to it. In neither case is the Motion to Compel denied as to AT&T Inc.

### 2. Agreement to Arbitrate

Plaintiffs' next argument is that AT&T has not carried its burden of showing that Plaintiffs agreed to arbitrate. See Opp'n to Mot. to Compel at 7. "[A] party seeking to invoke the FAA § 4 must make a prima facie showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement 'in issue.'" Hines v. Overstock.com, Inc., 380 Fed. Appx. 22, 24 (2d Cir. 2010). Once the burden has shifted to plaintiffs, they must "unequivocally deny" the agreement. Perez v. Maid Brigade, Inc., No. C 07-3473, 2007 WL 2990368, at *4 (N.D. Cal. Oct. 11, 2007).

Plaintiffs first question whether two of the named Plaintiffs entered into any agreements with Defendants at all.

As to Jacob Stern, Defendants assert that he purchased an iPhone from a retail store in Oakland, activated it for use with AT&T Mobility's wireless service, and agreed to AT&T Mobility's terms of service by signing an electronic signature-capture device. Opp'n at 7-8 (citing Mot. to Compel at 4). Plaintiffs dispute that claim and point to Stern's declaration that "[it] is not his signature that appears on Exhibit 5 of the Bethel Decl[aration]." Id. at 8 (citing Stern Decl. ¶¶ 3, 4). But Stern's declaration does not deny that an authorized user of his account entered into the agreement on his behalf, and in fact AT&T's practices suggest that this is indeed what happened. See Williamson Reply Decl. (dkt. 52) ¶ 4 (explaining that "As a matter of ATTM's policy and routine practice, in September 2010, a customer wishing to purchase and activate a wireless device in an ATTM company-owned retail store, for use on an existing line of service, was required to display identification verifying that he or she was the holder of the account or an authorized user on it.").[3] Provided someone else signed

---

[3] Likely the individual who signed the agreement on Stern's behalf was an individual named Jenny Stern. See Bethel Reply Decl. ¶ 4 ("According to ATTM records, Jenny Stern has been an authorized user on Mr. Stern's account since September 3, 2010.").

5

the agreement on Stern's behalf, the terms of service would apply to "all authorized or unauthorized users or beneficiaries of services or Devices under this or prior Agreements," see Rives Decl. Ex. 1 at 15, including Stern.

As to Lenza McElrath, Defendants assert that he purchased an iPhone from a retail store and, on November 6, 2008, activated the phone for use with AT&T wireless service using an interactive voice response system, which required him to indicate acceptance of AT&T Mobility's wireless service agreement by pressing a button on the phone's keypad. Mot. to Compel at 3-4.[4] Plaintiffs respond that while that is true, the phone was subsequently returned, which released McElrath from any agreement associated with its purchase. Opp'n to Mot. to Compel at 8 (citing McElrath Decl. ¶¶ 6, 8). But Defendants point to Plaintiffs' allegations in the Complaint that McElrath purchased an iPhone in July 2008, Compl. ¶ 21, and note that he activated the device for ATTM wireless service at the time of purchase, agreeing to AT&T's terms of service. Bethel Decl. ¶ 6, Exs. 2, 3. Plaintiffs have not denied that the July 2008 agreement existed.[5]

Plaintiffs next argue that, even if they did enter into agreements with Defendants – as appears to be the case – "AT&T have not met their burden of . . . making a prima facie case that Plaintiffs in fact agreed to the AT&T Arbitration Agreements." Opp'n to Mot. to Compel at 8. They contend that "[n]othing indicates that Blau or McElrath consented to something with the text of the arbitration agreement, or that even contains a mention of the arbitration agreement," that "[n]othing indicates that what Blau and McElrath consented to effectively integrated a specific version of AT&T's Terms of Service," and that there is "[n]o

---

[4] Defendants further assert that AT&T Mobility revised its arbitration provision in early 2009, pursuant to the change-in-terms provisions of AT&T Mobility's terms of service. Mot. to Compel at 4. Plaintiffs have not demonstrated that that revision was improper. A comparable change-in-terms provision was part of the terms of service that passed muster in Laster v. T-Mobile USA, Inc., No. 05-cv-1167, 2008 WL 5216255, at *2 (Aug. 11, 2008), aff'd sub nom. Laster v. AT&T Mobility LLC, 584 F.3d 849 (9th Cir. 2009), rev'd on other grounds sub nom., Concepcion, 2010 WL 1725601, at *12-14 (U.S. 2010). Plaintiffs have not asserted that they were not properly notified of the change in terms. In addition, even if the change in terms were invalid, the arbitration agreement that controlled would be the one found enforceable in Concepcion. See Reply at 11-12 n.8.

[5] Plaintiffs do not dispute that Blau entered into an agreement with AT&T Mobility.

6

indication that Plaintiff[s] actually had effective access to their complete agreement after the transaction was complete." Id. at 9.

But Defendants have demonstrated that Plaintiffs agreed to arbitrate by demonstrating that Plaintiffs agreed to Defendants' terms of service. See Al-Thani v. Wells-Fargo & Co., No. C 08-1745, 2009 WL 55442, at *6 (N.D. Cal. May 15, 2006). Plaintiffs' statements that they "do not recall" seeing the terms of service at the time they agreed, see McElrath Decl. ¶ 4; Stern Decl. ¶ 5; Blau Decl. ¶ 2, do not rise to the level of unequivocal denials of having agreed to those terms. If a party could get out of a contract by arguing that he did not recall making it, contracts would be meaningless. It is not even relevant if Plaintiffs did not read the agreements before signing them. Al-Thani, 2009 WL 55442, at *6. Indeed, Plaintiffs never assert that they were denied an opportunity to review all of the terms to which they were agreeing. See id. at *6 ("If Plaintiff had not received the agreement and was concerned about being bound to terms she had not read, she could have asked to see it before signing it"); Luafau v. Affiliated Computer Servs., Inc., 2006 WL 1320472, at *3 (N.D. Cal. May 15, 2006) (holding that agreement was "not unenforceable merely because Plaintiff allegedly did not see" it); Schwartz v. Comcast Corp., 256 Fed. Appx. 515, 518 (3d Cir. 2007) (plaintiff's denial "that he received a copy of his subscription agreement" is "not sufficient to create a material dispute of fact"); see also Hill v. Gateway 2000, Inc., 105 F.3d 1147, 1149 (7th Cir. 1997) ("competent adults are bound by [form contracts], read or unread.").

Accordingly, Defendants have made a *prima facie* showing that Plaintiffs agreed to arbitrate, and Plaintiffs have not met their burden of putting at issue the making of that agreement. See Hines, 380 Fed. Appx. at 24. Plaintiffs should therefore be held to the terms of those agreements – provided they are valid and enforceable. Their request to conduct discovery as to the making of the arbitration agreements is denied. See Moses H. Cone Mem'l Hosp., 460 U.S. at 22 (discussing "Congress's clear intent, in the Arbitration Act, to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible"); see also Ex parte Horton Family Housing, Inc., 882 So.2d 838 (Ala. 2003) (explaining that discovery in motion to compel is rare, but permitted where party

7

opposing the motion presents "'a factually based predicate' that establishes what the party knows, what it expects to discover, and why that information matters.").

### 3. Illegality under California and Federal Law

Plaintiffs next argue that "Concepcion did not hold that all state law unconscionability doctrines were invalidated by the FAA." Opp'n to Mot. to Compel at 11. Instead, they argue, Concepcion allowed that agreements to arbitrate could be invalidated by "'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration." Id. (citing Concepcion, 131 S. Ct. at 1746). Plaintiffs contend, then, that their arbitration agreements are invalid under both California and federal law. The Court disagrees.

#### a. California Law

Under California law, an arbitration agreement is unenforceable if it is both procedurally and substantively unconscionable. See Davis v. O'Melveny & Meyers, 485 F.3d 1066, 1072 (9th Cir. 2007). Courts use a sliding scale: the more procedural unconscionability there is, the less substantive unconscionability is required, and vice versa. See Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 114 (2000). Plaintiffs argue that "In Concepcion the Supreme Court explicitly stated that States could "requir[e] class-action-waiver provision in adhesive arbitration agreements to be highlighted" and that "California has just such a rule." Opp'n to Mot. to Compel at 12 (citing Concepcion, 131 S. Ct. at 1750 n.6).

But Plaintiffs fail to point to "just such a rule" in California, instead relying on the holding in Armendariz, 24 Cal. 4th at 114, that "a contract or provision which does not fall within the reasonable expectations of the weaker or 'adhering' party will not be enforced against him." Id. at 13. And they argue that "[i]t does not fall within the reasonable expectations of a consumer that a corporation would ask them to sign a contract that violates the law." Id. The Court finds that reasoning to be circular.

Moreover, Plaintiffs concede that there is no issue of consumers' reasonable expectations if the arbitration waiver provision is "up front and bold." Id. It is. The first page of AT&T's terms of service advises consumers that their agreements require the use of individual arbitration to resolve disputes, "rather than jury trials or class actions." See Rives Decl. Ex. 1 at 1, Ex. 3 at 1. It explains clearly and in boldface type: "arbitration under this Agreement will take place on an individual basis; class arbitrations and class actions are not permitted." Id. Ex. 1 at 14, Ex. 3 at 13. As discussed above, Plaintiffs agreed to Defendants' terms of service, and never assert that they were denied an opportunity to review all of the terms to which they were agreeing. Having agreed to the terms of service, Plaintiffs are presumed to have read them. See, e.g., Randas v. Y.M.C.A. of Metro L.A., 21 Cal. Rptr. 2d 245, 248 (Ct. App. 1993).

Accordingly, Plaintiffs fail to show that the agreements are unconscionable under California law.

### b. Federal Law

Plaintiffs make two related arguments as to why the agreements violate federal law. First, they argue that "AT&T inserted this provision as part of a scheme to defraud," and that "[t]his determination" – presumably a judicial finding on whether this is true – "must be made before compelling arbitration because under California law a term provision that violates Federal law would not [be] enforceable." Opp'n to Mot. to Compel at 14. Second, they argue that the Court should decline to enforce any agreement provision secured as part of an illegal scheme under RICO. Id. at 14-15. To the extent that Plaintiffs thereby contend that their scheme to defraud and RICO claims are inarbitrable, see id. at 15 ("RICO, however, is a federal law not preempted by the FAA."), that is incorrect, see Shearson/American Express v. McMahon, 482 U.S. 220, 242 (1987) ("nothing in RICO's text or legislative history otherwise demonstrates congressional intent to make an exception to the Arbitration Act for RICO claims").

9

But Plaintiffs insist that that is not their argument: "Let us be clear: Plaintiffs do not contend that Congress sought to prevent arbitration of RICO claims. Rather, the claim is, that if one fraudulently induces an arbitration agreement <u>as part of</u> a scheme made illegal under RICO, a California court may decline to enforce that agreement." Opp'n to Mot. to Compel at 15. So articulated, the claim is not properly before this Court. <u>Prima Paint Corp. v. Flood & Conklin Mfg.Co.</u>, 388 U.S. 395 (1967), held that a claim for fraud in the inducement of an entire contract was for an arbitrator to decide, where the arbitration clause covered "[a]ny controversy or claim arising out of or relating to this Agreement." The Court reiterated that holding more recently in <u>Buckeye Check Cashing, Inc. v. Cardegna</u>, 546 U.S. 440, 445-46 (2006) ("[u]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.").

Accordingly, Plaintiffs fail to show that the agreements violate federal law.

### 4. Meaningful Relief

Finally, Plaintiffs argue that the agreement cannot be enforced because it eliminates any meaningful relief on their individual claims. <u>See</u> Opp'n to Mot. to Compel at 16. Plaintiffs claim that the primary relief they seek in the lawsuit is injunctive relief, and that they cannot obtain such relief because the agreement prevents them from obtaining the remedies provided in the CLRA and UCL; they also contend that the costs to arbitrate are prohibitively expensive. <u>Id.</u> at 17-19.

#### a. Injunctive Relief Under CLRA and UCL

Plaintiffs argue that the arbitration agreement is unenforceable because it would bar them from exercising their statutory rights to seek injunctive relief under the UCL and CLRA. <u>See</u> Opp'n to Mot. to Compel at 17-18. This argument fails under <u>Concepcion</u>, 131 S. Ct. at 1748, which found that the FAA preempts state law to the extent the state law would preclude "enforcement of arbitration agreements according to their terms so as to create streamlined proceedings," even if the state law is based on public policy.

Another court in this district recently addressed the effect of <u>Concepcion</u> on California's law prohibiting arbitration of public injunctive relief claims, and concluded that the FAA preempts California law. See <u>Arellano v. T-Mobile USA, Inc.</u>, No. C 10–05663 WHA, 2011 WL 1842712, at *1 (N.D. Cal. May 16, 2011). <u>Arellano</u>, 2011 WL 1842712, at *1, involved similar facts: plaintiff brought a class action against T-Mobile, seeking injunctive relief, among other remedies, for claims brought under the CLRA and UCL. T-Mobile argued that the claims should be arbitrated based on the parties' arbitration agreement. <u>Id.</u> Plaintiff made several public policy arguments for why the CLRA and UCL claims were inarbitrable. <u>Id.</u> at *2. Judge Alsup, however, ruled that the FAA "preempts California's preclusion of public injunctive relief claims from arbitration, at least for actions in federal court." <u>Id.</u> at *1 (citing <u>Concepcion</u>, 131 S. Ct. at 1747).

Plaintiffs here make a similar public policy argument, see Opp'n at 17-18 ("not acceptable" to not be able to obtain desired relief under CLRA and UCL), but, as in <u>Arellano</u>, <u>Concepcion</u> forecloses this argument, see <u>Concepcion</u>, 131 S. Ct. at 1753 ("The dissent claims that class proceedings are necessary to prosecute small-dollar claims that might otherwise slip through the legal system . . . But States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons."). Several other courts in this district have also so held. See <u>Nelson v. AT&T Mobility LLC</u>, No. 10-4802, 2011 WL 3651153, at *2 (N.D. Cal. Aug. 18, 2011) (enforcing arbitration clause "even though plaintiffs may argue that 'preclusion of injunctive relief on behalf of the class equates to preclusion of the ability to obtain effective [relief] – enjoining deceptive practices on behalf of the public in general"); <u>In re Apple and AT&T iPad Unlimited Data Plan Litig.</u>, No. 10-2553, 2011 WL 2886407, at *4 (N.D. Cal. July 19, 2011) ("<u>Concepcion</u> would seem to preempt California's arbitration exemption for claims requesting public injunctive relief"); <u>Kaltwasser v. AT&T Mobility LLC</u>, No. 07-411, 2011 WL 4381748, at *7 (N.D. Cal. Sept. 20, 2011) (same). And this Court recently reached this same conclusion in <u>Meyer v. T-Mobile USA Inc.</u>, No. 10-5858, 2011 WL 4434810, at *4 (N.D. Cal. Sept. 23, 2011).

11

Accordingly, the Court finds that the CLRA and UCL do not bar enforcement of the arbitration agreement.

### b. Prohibitive Costs

Finally, Plaintiffs argue that "[d]espite their claim that arbitration is 'cost-[free]' to consumers, in order to vindicate Plaintiffs['] right to an injunction AT&T will force Plaintiffs to incur tremendous expenses related to arbitration which they are unable to afford," and that, therefore, enforcing such an agreement violates Green Tree, 531 U.S. 79 and Armendariz, 24 Cal. 4th at 110-111. Specifically they assert that AT&T will likely avail itself of the clause in the arbitration agreement providing that AT&T will only pay the costs for claims that do not exceed $75,000, see Rives Decl. Ex. 1 at 17, by arguing that the injunction Plaintiffs seek is worth more than $75,000. Opp'n to Mot. to Compel at 18. Plaintiffs thus argue that the arbitration fee for simply filing the case is a steep $3,350. Id. (citing American Arbitration Association, Commercial Arbitration Rules and Mediation, http://www.adr.org/sp.asp?id=22440#A11 (nonmonetary claims)).

In Green Tree, 531 U.S. at 90, the Supreme Court noted that "[i]t may well be that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum." But the Court in that case held that "the 'risk' that [a litigant] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." Id. at 91. Here, having only argued that "the value of an injunction can be argued to be more than $75,000," Opp'n to Mot. to Compel at 18 (emphasis added), Plaintiffs' argument is too speculative to bar enforcement of the agreement.

Moreover, Defendants respond that "there is no such risk here" because "[t]he stakes of plaintiffs' claims would be far below the $75,000 threshold if they were to initiate individual arbitrations." Reply at 2. Indeed, Plaintiffs' argument hinges on their having sought a broad, class-wide injunction relating to AT&T's services, but the agreement does not permit class-wide claims seeking such relief. See Rives Dec. Ex. 1 at 1 ("This

12

Agreement requires the use of arbitration on an individual basis") and at 18 ("The arbitrator may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. YOU AND AT&T AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING."). Plaintiffs may only bring individual actions. Should they do so, they can now rely on AT&T's assertion in a public filing that "[t]he stakes of plaintiffs' claims would be far below the $75,000 threshold if they were to initiate individual arbitrations," Reply at 2, which should give them great confidence that AT&T would pay for all arbitration costs in their cases.

Accordingly, there is no basis for finding that Plaintiffs will be saddled with arbitration costs, or that Green Tree, 531 U.S. 79 or Armendariz, 24 Cal. 4th at 110-111 would bar enforcement of the agreements.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion to Compel.
**IT IS SO ORDERED.**

Dated: January 3, 2012

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE